COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Baker and Bray
Argued at Norfolk, Virginia


ANTONIO L. JEFFERSON, S/K/A
 ANTONIO LEMON JEFFERSON
                                        OPINION BY
v.          Record No. 0703-97-1    JUDGE RICHARD S. BRAY
                                        JUNE 9, 1998
   COMMONWEALTH OF VIRGINIA

             FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                     E. Everett Bagnell, Judge

             Andrew M. Sacks (Sacks & Sacks, on briefs),
             for appellant.

             Thomas D. Bagwell, Assistant Attorney General
             (Richard Cullen, Attorney General, on brief),
             for appellee.


     Antonio Lemon Jefferson (defendant) was convicted on pleas

of nolo contendere to indictments charging murder and the related

use of a firearm.  Prior to sentencing, defendant learned that

the Commonwealth had failed to disclose certain exculpatory

evidence, and unsuccessfully moved the trial court for leave to

withdraw the pleas and grant a new trial.  He argues on appeal

that the disputed pleas were improvidently tendered, and the

court erroneously denied the requested relief.  We disagree and

affirm the convictions.

                              I.

     A grand jury indicted defendant for the instant offenses on

May 22, 1995.  The court ordered the Commonwealth, on June 26,

1995, to disclose, inter alia, "[a]ll evidence or information in

[its] possession or control . . . . which tends to exculpate"

defendant.  Responding, the Commonwealth provided defendant with summarized portions of several statements given to police by witnesses which conflicted with the recollections of other, unnamed witnesses.[1]  No mention was made of a police interview with witness Letitia King conducted on September 19, 1994, during which she was unable to provide details of the incident, including the identity of the perpetrator, explaining, "I can't see, I need glasses."

On June 29, 1995, defendant appeared before the court, pled not guilty to the indictments, and requested trial by jury.  At trial on July 18, 1996,[2] defendant initially pled "no contest" but, within minutes, changed his pleas to "not guilty" on both indictments and demanded a jury trial.  During the attendant colloquy with the court, defendant complained, "we're not ready," because his attorney was unprepared and his witnesses were not present.  However, following further inquiry, the court ordered "that the case proceed," and defendant then requested rearraignment to permit pleas of nolo contendere, only to once again plead not guilty and demand a jury.

During the first day of trial, the Commonwealth's evidence established that Vernon Lee Jones (victim) died from "[m]ultiple gunshot wounds with internal bleeding."  Forensic examination of

---

[1]This document was entitled "EXCULPATORY INFORMATION" by the Commonwealth.

[2]Trial was originally docketed for October 11, 1995, but defendant failed to appear.

the body revealed eight "separate gunshot tracks" which could be "explained by a minimum of six shots." The medical examiner described the wounds, which included two to the front, one to the side, and one to the left hand, noting that "most of the gunshots were to the back."

Several witnesses to the homicide also testified for the Commonwealth. Shortly before the offenses, Sheldon Jones (Sheldon) had seen defendant in the neighborhood, heard him shout, "there go [sic] June [Vernon Jones, the victim], everybody get back in the car," and quickly leave in an automobile. According to Sheldon, the vehicle soon returned, "somebody jump [sic] out [sic] the car" that "looked like" defendant, and "five or six" gunshots sounded as Sheldon fled to a nearby residence. Moments later, Sheldon saw the victim wounded and "laying on the ground."

Commonwealth witness Vernon Artis (Artis) observed defendant exit a vehicle and "point [a] gun towards Kevin [Jones]" and the victim, both of whom were unarmed and "standing next to" a parked car. Artis quickly "got down," heard gunshots, and watched defendant flee, leaving the wounded victim. Kevin Jones corroborated Artis' testimony, adding that he was "[j]ust standing there talking" to the victim when defendant "jumped out of the [vehicle] hatch[back] with a [sic] AK" and "shot [the victim] several times" at a range of approximately six feet.

The Commonwealth concluded the opening day of trial with

witness Letitia King (King). Contrary to her earlier statement to police, King testified that, while seated in a parked car, she saw defendant "jump out of the back" of another car, aim and repeatedly fire "a very large gun" directly at the unarmed victim "standing there talking" to her. She noticed "the backfire from the gun" and detailed the victim's movements while "getting shot" by defendant, then "about fifteen feet away." Despite the manifest inconsistencies between King's pretrial statements to police and her testimony, the Commonwealth did not disclose to defendant the contents of the earlier interview, and trial recessed for the evening.[3]

When trial reconvened the following morning, defendant's counsel advised the court that defendant wished to "withdraw his plea [sic] of not guilty and enter a plea [sic] of no contest." Defendant was then rearraigned and pled nolo contendere to the indictments. Before accepting the pleas, the trial court advised defendant that a nolo contendere plea "is the same as a guilty plea" and constituted a waiver of his "right to defend himself" in trial. Asked if he was "entering those pleas . . . because [he] was guilty," defendant answered, "I think it's in my best interest to do so." After further inquiry, the court accepted the pleas, found defendant guilty of the offenses, and ordered a

_____

[3]Defendant does not assert that the Commonwealth intentionally withheld such evidence. See Rule 3A:11(g) (duty to disclose continuing); MacKenzie v. Commonwealth, 8 Va. App. 236, 243, 380 S.E.2d 176, 177 (1989) (good faith does not excuse nondisclosure).

presentence report.

In reviewing the presentence report, defendant first learned of King's pretrial statements to police and moved the court, prior to sentencing, to allow withdrawal of the nolo contendere pleas and grant a new trial. In support of his motion, defendant asserted that he decided upon the pleas at the conclusion of King's testimony, arguing that the "outcome would have been different" had he been aware of the opportunity to impeach her. The trial court denied the motions, finding that any consequences of "information" withheld from defendant, when considered with the other evidence, was "harmless at most."

During the ensuing sentencing hearing, defendant testified that he approached the victim and Kevin Jones to discuss some "conflicts with Kevin," not to engage the victim. However, because the victim had repeatedly robbed him at "gunpoint," "abducted . . ., and kidnapped" him and "threatened" his family, defendant was "scared for [his] life when it came to" the victim and armed himself. Defendant testified that he saw the victim "go for [his] gun" and fired at the victim to "keep him from shooting me." Although acting in "self defense," defendant explained that he "pleaded no contest . . . because [he] felt like [his] testimony alone wouldn't . . . be strong enough for a jury after hearing all those negative false statements that the witnesses was [sic] giving." At the conclusion of the proceedings, the court sentenced defendant to life imprisonment

for murder and three years for the related firearm offense.

Shortly thereafter, defendant's appellate counsel moved the court to reconsider its rulings. Accordingly, the court "suspended" the sentencing order and conducted a rehearing, during which counsel proffered, without objection, that defendant "has a substantial defense . . . of self defense" but pled nolo contendere after concluding that his testimony could not overcome the "false statements" of Commonwealth witnesses.[4] Defendant, therefore, reasoned that ignorance of King's prior inconsistent statements had resulted in uninformed and misguided pleas, to his severe prejudice. In once again denying defendant's motions, the court acknowledged that defendant may have established a "plea of self defense," but, "considering the totality" of the record, King's impeachable testimony did not sufficiently influence the disputed pleas.

The Commonwealth concedes that the inconsistency between King's earlier statements to police and later testimony was exculpatory and properly subject to the discovery order. The Commonwealth argues, however, that any error attributable to nondisclosure had no objectively reasonable effect on defendant's pleas and, therefore, was immaterial to the result.

II.

_____

[4]Counsel further proffered detailed evidence of the victim's reputation for "violen[ce and] turbulen[ce]," his prior attacks on defendant, and his movements moments before the shooting which suggested to defendant that he "was going to a weapon that he was known to carry."

Code § 19.2-254 provides that the accused in a criminal proceeding "may plead not guilty, guilty or nolo contendere" upon arraignment for the offense "on which he will be tried."  Code § 19.2-254.  A plea of nolo contendere is neither "a confession of guilt" nor a "declaration of innocence equivalent to a plea of not guilty."  Commonwealth v. Jackson, 255 Va. ___, ___, ___ S.E.2d ___, ___ (1998) (citation omitted).  It allows an accused, "'thinking it best . . . not to submit to trial,'" but "'unwilling to confess the truth of the charge, [and] . . . plead guilty,'" to "'throw[] himself on the mercy of the court . . . without confessing or denying . . . guilt.'"  Roach v. Commonwealth, 157 Va. 954, 958, 162 S.E. 50, 51 (1932) (quoting Honaker v. Howe, 60 Va. (19 Gratt.) 50, 53 (1869)).  "Nonetheless, by entering [the] plea . . ., the defendant 'implies a confession . . . of the truth of the charge . . . [and] agrees that the court may consider him guilty' for the purpose of imposing judgment and sentence."  Jackson, 255 Va. at ___, ___ S.E.2d at ___ (quoting Honaker, 60 Va. (19 Gratt.) at 52).  "[I]n misdemeanor and felony cases, the court [must] accept a plea of nolo contendere," Code § 19.2-254, once satisfied "that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea."  Rule 3A:8.

An accused may seek to withdraw both a plea of guilty and nolo contendere, previously tendered and received by the court, upon motion "made only before sentence is imposed or imposition

of a sentence is suspended, but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea."  Code § 19.2-296.  Thus, Code § 19.2-296 treats pleas of guilty and nolo contendere alike in the context of a motion to withdraw.

Generally, "whether or not an accused should be allowed to withdraw a plea of [nolo contendere] for the purpose of submitting one of not guilty is a matter that rests within the sound discretion of the trial court."  Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949); Hoverter v. Commonwealth, 23 Va. App. 454, 463-64, 477 S.E.2d 771, 775 (1996).

> "As in other cases of discretionary power, no general rule can be laid down as to when a defendant will be permitted to withdraw his plea.  The decision in each case must depend . . . on the particular . . . circumstances.  Generally, however, it may be said that the withdrawal of a plea of [nolo contendere] should not be denied . . . where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place."

Parris, 189 Va. at 325, 52 S.E.2d at 874 (emphasis added) (quoting 14 Am.Jur. Criminal Law § 287); Manning v. Commonwealth, 22 Va. App. 252, 254, 468 S.E.2d 705, 706 (1996).

Resolution of this issue by the trial court "requires an examination of the circumstances confronting [the] accused immediately prior to and at the time he pleaded to the charge."

- 8 -

Id. at 322, 52 S.E.2d at 872.

> "The least surprise or influence causing a defendant to plead [nolo contendere] when he has any defense at all should be sufficient grounds for permitting a change of plea from [nolo contendere] to not guilty. Leave should ordinarily be given to withdraw [the] plea . . . if . . . entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; . . . made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury."[5]

Id. at 325, 52 S.E.2d at 874 (quoting 14 Am.Jur. Criminal Law § 287) (emphasis added).

It is well established that evidence which impeaches the credibility of a witness is exculpatory, Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986), and suppression of exculpatory evidence, material to either guilt or punishment, violates due process. Brady v. Maryland, 373 U.S. 83, 87 (1963); Stover v. Commonwealth, 211 Va. 789, 795, 180 S.E.2d 504, 509 (1971). "[E]vidence is material, 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Hughes v. Commonwealth, 18 Va. App. 510, 525, 446 S.E.2d 451, 460-61 (1994) (en banc) (citations omitted). "'"A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome [of the trial]."'" Knight v.

---

[5]Defendant argues that his motion to withdraw the plea finds support in every circumstance recognized in Parris.

<u>Commonwealth</u>, 18 Va. App. 207, 212, 443 S.E.2d 165, 168 (1994) (citations omitted).  To prevail on appeal, defendant must "demonstrate that the undisclosed evidence was [both] exculpatory and material" beyond mere speculation or possibility.  <u>Goins v. Commonwealth</u>, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996); <u>see</u> <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988) (accused must establish likelihood of different plea had exculpatory evidence been available).

Thus, defendant was entitled to withdraw the disputed plea if the record established "<u>any</u> defense <u>at all</u>" to the indictments, <u>and</u> it was reasonably probable that nondisclosure of the exculpatory impeachment evidence had the "<u>least</u> . . . influence" on such plea.  This highly remedial principle recognizes that a plea of <u>nolo</u> <u>contendere</u> constitutes a waiver of trial, together with "many important constitutional rights," including "the privilege against self-incrimination, the right to a trial by jury, the right to confront witnesses, the right to demand that the prosecution prove its case beyond a reasonable doubt and the right to object to illegally obtained evidence." <u>Dowell v. Commonwealth</u>, 12 Va. App. 1145, 1148-49, 408 S.E.2d 263, 265 (1991), <u>aff'd en banc</u>, 14 Va. App. 58, 414 S.E.2d 440 (1992).  Such fundamental guarantees may be abandoned only by an accused fully advised of all relevant considerations, thereby ensuring the exercise of informed judgment to a just result.

III.

Guided by Parris, we review the trial court's decision in this instance for abuse of discretion, a "strict legal term" "synonymous with a failure to exercise a sound, reasonable and legal discretion," a "clearly erroneous conclusion and judgment -- one . . . clearly against logic[,] . . . [and] the reasonable and probable deductions to be drawn from the facts disclosed." Black's Law Dictionary 10 (6th ed. 1990 (citations omitted)). "'[T]he discretion of the able, learned and experienced trial judge . . . will not be interfered with upon review of this Court, unless some injustice has been done.'" Bell v. Kirby, 226 Va. 641, 643, 311 S.E.2d 799, 800 (1984) (quoting Temple v. Moses, 175 Va. 320, 337, 8 S.E.2d 262, 269 (1940)). Thus, we should reverse only upon "clear evidence that [the decision] was not judicially sound" and not simply to substitute our "discretion for that rendered below." Nat'l Linen Serv. v. Parker, 21 Va. App. 8, 19, 461 S.E.2d 404, 410 (1995).

Following defendant's proffer, together with a thorough argument of his counsel, which included controlling legal principles, the court correctly considered the merits of his motions under the circumstances prevailing at the time of the disputed plea and recognized that defendant could conceivably prevail on a "plea of self defense." However, when viewed with the entire record, the court was unconvinced of the reasonable probability that nondisclosure of the exculpatory evidence had the requisite "least . . . influence" on the result in issue,

- 11 -

defendant's pleas of <u>nolo contendere</u>.  This conclusion was not clearly erroneous, without support in the evidence, or judicially unsound, and visited no injustice on defendant.

Through the unimpeached testimony of three eyewitnesses, excluding King, the Commonwealth established that defendant killed the unarmed victim, without provocation, willfully, deliberately and with premeditation, by repeatedly shooting him at close range.  Faced with such overwhelming evidence of guilt, nothing in the record, save defendant's post-trial assertions, suggests a reasonable probability that nondisclosure of King's pretrial statements had even the "least" influence on his decision to plead <u>nolo contendere</u>.  Thus, the record does not demonstrate that such exculpatory evidence was material to defendant's pleas, and the trial court correctly overruled his motions.

Accordingly, the court did not abuse its sound discretion, and we affirm the convictions.

<u>Affirmed.</u>